Johnson, J.
delivered the opinion of the Court.
It is coneeded that the slave Betty was originally the property of Jacob Bollinger; and the plaintiff gave in evidence a bill of sale from him to her late husband William Guphill, dated the 1st of January, 1811. She was then a girl, and the children *231 are her subsequent increase. Sometime afterwards, Betty went into the possession of Mrs. Snyder, now Mrs. Foster, who was the mother of defendant’s wife, a widow, and neice of William Guphill. She retained possession of them until about the year 1819, when the possession was restored to William Guphill, who retained them until his death in November, 1821. By his will he bequeathed them to the plaintiff, whom he made executrix; and she kept them in possession until December, 1825, a period of more than four years, when the defendant got them into his possession.
There is no controversy about any of the facts above stated; and standing alone they establish an unquestionable title in the plaintiff. First, by a regular deduction of title ; and secondly, by a possession in her for more than four y.ears: so that the matters in controversy must be resolved by the merits of the defence, which I will now proceed to notice.
The defendant claims these slaves in right of his wife. It was in evidence that George Slappy administered on the estate of George Snyder, the father of defendant’s wife, and that William Guphill, the plaintiff’s late husband, took upon himself, as the friend of the widow and children, to call upon him for a settlement of the estate, and that about the time he purchased Betty, he received from him on that account a sum of money, the amount of which is not ascertained. Several witnesses testified as to the declarations of William Guphill that he had purchased Betty with the money he received from George Slappy, for and on account of defendant’s wife, who was then an infant, and that she belonged to her. Declarations of the same import were proved to have been made by the plaintiff herself subsequently to the death of her husband.
The receipt of the money from Slappy by William Guphill, and the investment of it in the negro Betty, for and on account of the defendant’s wife, are facts earnestly controverted by the plaintiff, and about which doubts may well be entertained. The jury having however found them for the defendant, the Court, according to a well settled rule, are bound to regard them as sufficiently ascertained; so that the question now to be considered is, whether the defendant, having obtained a tortious possession of the slaves, is intitled to retain them in opposition to the claims of the plaintiff.
*232 In the brief summary which I have before given of the evidence on the part of the defendant, I have, for the purpose of avoiding details, aimed to give conclusions of fact most favourable to him, and that upon which the verdict was evidently founded. These conclusions take for granted that William Guphill, under whom the plaintiff derives her title, possessed himself of funds which belonged to the defendant’s wife, when she was an infant, and laid them out in the purchase of Betty for her use, but took the title to himself.
Wow there can be no diversity of opinion as to the nature of the interest which under these circumstances the defendant’s wife had in the negroes; and the rights of William Guphill and his liabilities are as well ascertained. The infancy of defendant’s wife precluded the possibility of her assent to this disposition of .her funds: but upon her attaining full age she, and on her marriage her husband for her, had the right to elect, whether she would accept the substitute, or require an account and payment of the original fund. William Guphill had incurred the -rés poií sibil i ty conseqent on this right of election. In the event of. the-:death of,the slave, the defendant had a right to require the payment of the money. Until, therefore, the election was made, he, and those claiming under him, had the right of possession. In other words, the law raised an implied trust, that he would hold the slave to the use of the defendant’s wife, subject to that right of election. He stood in the legal relation of trustee to her, and she of cestuy que trust to him.
There is no proof, as 1 shall have occasion to notice more particularly hereafter, of any election on the part of the defendant, except what arises from the fact of a tortious taking, .or of the surrender, or execution of the trust, on the part of William Guphill, or the plaintiff, his executrix; and this branch of the case resolves itself into the question, whether a trustee may maintain trover against the cestuy que trust for a conversion of the trust property.
The rule is very clear that a trustee, or any one else intitled to the possession of property, may maintain trover for it. That a trustee has the right of possession even against his cestuy que trust, until he has executed or surrendered it, is equally obvious. He is intitled to a lien on the trust property for all the expenditures incident to the execution of the trust, nor will even a Court *233 of Equity divest him of the possession without providing an indemnity. Of his accounts, as trustee, Equity alone takes cognizance, and although it might be competent to him to establish them by evidence admissible in a Court of Law, that Court is incompetent to administer adequate relief. Let it be supposed, that the plaintiff here had proved on the trial of this cause, that William Guphill had expended in the execution of the supposed trust, a sum equal in amount to the full value of the four slaves, it would have profited her nothing in the result. If the defendant were intitled to the possession, the Court had not the power to reinstate the plaintiff. If she had brought her assumpsit at law, she would have stood in the relation of a general creditor, without the benefit of a specific lien; and above would have been driven in a Court of Law to a coursj ceeding, and a mode of proof, wholly different in t] and result, from the situation she would have been in,lj\S defend ant to a bill in Equity for an account and surreni trust. It follows then clearly, that a trustee cannot fifs divestei of the right of possession of the trust property, but wi consent, or by a decree of the Court of Equity.
These positions have not been seriously controverted : and the leading ground of contest arises out of the direction given to the jury by the presiding Judge, that if they believed that Betty had been purchased with the money furnished by Slappy, they might presume that the trust had been surrendered ; which the plaintiff complains of as error. This is clearly not one of the cases in which presumption stands in the place of proof. That doctrine applies only in those cases, where the proof of one fact leads us to conclude, that it could not well exist without having been attended by some other; as in the familiar case of presuming a grant from long and uninterrupted possession. Now proof that William Guphill purchased Betty for defendant’s wife, with money furnished by George Slappy, although it constitutes a resulting trust, does not necessarily lead to the conclusion that he had also surrendered the trust. Indeed the converse is necessarily true, for, according to this presumption, the trust would be annihilated by the very act which created it.
There are, however, other circumstances which are relied on to show a surrender of the trust, which I will now proceed to *234 notice. They consist, first, of the declarations of "William Q.Upj1j|j an(] tpe plaintiff, that these slaves belonged to defendant’s wife; and secondly, of the delivery of them to her mother by him.
If these declarations stood alone they would perhaps justify the conclusion ; but when connected with the circumstances, according to the defendant’s own shewing, they are perfectly consistent with the plaintiff’s .right of possession. If, as the defendant contends, the plaintiff and her late husband were possessed of the slaves as trustees to the use of his wife, the declaration that they belonged to her, must have been made in reference to that state of things, as no surrender had ever been made either to her or himself; and all the rights of that relationship must of course remain.
The delivery to the mother of defendant’s wife, as explained by the evidence on the part of the plaintiff, was in the nature of a loan to her: but if that act was even intended as an execution or surrender of the trust, it could not so operate, because her mother was incompetent to accept it, and to discharge William Guphill. His liability would have remained the same, notwithstanding the acceptance of the mother, unless she had made the surrender ; and so far from it she restored the possession to him.
The defendant intermarried with his wife before the death of William Guphill; and if a surrender by him be conceded, then the rights of the defendant would be barred by the statute of limitations, as the plaintiff had the actual possession for more than four years after the death of her husband : and the only possible mode of preventing the operation of the statute is by placing her in the situation of trustee. In that situation she is intitled to retain the property, under the principle before laid down, until she surrenders it voluntarily, or until she shall be decreed to do so by a Court of Equity. There is no foundation for the pretence that she has done any act amounting to a surrender of the trust, admitting that she held in that character. The motion for a new trial must therefore be granted.
Motion granted.